**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lisa Burris,<br><br>        Plaintiff,<br><br>    vs.<br><br>Safeway, Inc.,<br><br>        Defendant. | No. CV-04-0477-PCT-PGR<br><br>OPINION AND ORDER |

Pending before the Court is defendant Safeway, Inc.'s Motion for Summary Judgment (doc. #54), wherein it seeks judgment pursuant to Fed.R.Civ.P. 56 as to all six claims of the plaintiff's First Amended Complaint (FAC).[1] Having considered the parties' memoranda in light of the evidence of record and the oral

---

[1] Since the plaintiff expressly withdrew her age discrimination claim (Third Claim), her Title VII disparate treatment claim (Fourth Claim), and her intentional infliction of emotional distress claim (Sixth Claim) at the oral argument on the summary judgment motion, thereby conceding that the defendant is entitled to summary judgment as to those claims, the Court will not discuss those claims.
As to the claims still in dispute, the Court generally notes that it discusses only those issues raised by the parties that the Court deems minimally necessary to the resolution of the summary judgment motion.

argument of counsel, the Court finds that the motion should be granted in part and denied in part.[2] THIS OPINION AND ORDER IS NOT FOR PUBLICATION.

Sexual Harassment Claim

The First Claim of the FAC raises a Title VII sex discrimination claim based upon the existence of a sexually hostile work environment.[3] The Court concludes that summary judgment in the defendant's favor is appropriate as to this claim because the evidence of record, together with all justifiable inferences supported by that evidence, all construed in the light most favorable to the plaintiff, is insufficient to allow a fair-minded jury to conclude that the plaintiff was the victim of actionable sexual harassment.

One of the elements that the plaintiff must establish in order to prevail on her hostile work environment claim is that she was subjected to verbal or physical conduct of a sexual nature, Little v. Windermere Relocation, Inc., 301 F.3d 958, 966 (9th Cir. 2002), *i.e.*, she must demonstrate that she was targeted for

---

[2] Because the parties are familiar with the facts of this case, the Court references the facts only as they are necessary to explain its resolution of the defendant's motion.

[3] The First Claim of the FAC states:

24. Plaintiff incorporates herein by reference paragraphs 1 through 23 as set forth above.
25. Plaintiff was regularly subjected by a coworker to verbal and physical conduct of a sexual nature toward her, which a reasonable woman would find abusive or hostile.
26. Plaintiff did, in fact, find the environment to be abusive and hostile.
27. The coworker's conduct was unwelcome.
28. The coworker's conduct was sufficiently severe and/or widespread to alter the conditions of Plaintiff's employment and created an abusive working environment.
29. Plaintiff complained to Defendant on several occasions, but Defendant failed to take remedial action to address the hostile work environment.

harassment because of her gender and not merely that she was subjected to nonactionable offensive behavior by co-workers.[4]  This dispositive distinction exists because Title VII is not a general civility code for the workplace and does not prohibit all employment-related verbal or physical harassment.  Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80, 118 S.Ct. 998, 1002 (1998); see also, Brooks v. City of San Mateo, 229 F.3d 917, 927 (9th Cir. 2000) ("[N]ot all workplace conduct that may be described as harassment affects a terms, condition, or privilege of employment within the meaning of Title VII.")

   As set forth in the FAC, the plaintiff's hostile work environment claim is predicated upon co-worker Teri Haynes' penchant for constantly telling offensively graphic and profane stories about her sex life.  What is missing from the plaintiff's case is any significant probative evidence establishing that Haynes' behavior was motivated by the plaintiff's gender as opposed to Haynes' own poor taste and lack of professionalism. See Oncale, 523 U.S. at 80, 118 S.Ct. at 1002 (Supreme Court noted that it had "never held that workplace harassment ... is automatically discrimination because of sex merely because the words used have sexual content or connotations."); see also, Penry v. Federal Home Loan Bank of Topeka, 155 F.3d 1257, 1263 (10th Cir.), cert. denied, 526 U.S. 1039 (1998) (Court, in affirming summary judgment for the employer on a sexual harassment claim, noted that "[i]f the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex

---

[4] Since this is the only element of the plaintiff's prima facie sexual harassment case that the defendant disputes, the Court does not consider the plaintiff's arguments contained in her response and made during the oral argument directed at the other elements of the her prima facie case, i.e., that the allegedly harassing conduct was not welcome and was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment.

discrimination as a result of that environment.")  The plaintiff has not shown, as required, that "members of one sex [were] exposed to disadvantageous terms or conditions of employment to which members of the other sex [were] not exposed."  Oncale, 523 U.S. at 80, 118 S.Ct. at 1002; *see also*, Porter v, Calif. Sept. of Corrections, 419 F.3d 885, 893 (9th Cir. 2005) (Court noted that certain insults directed at the plaintiff did not constitute sexual harassment in part because there has nothing to suggest that the insults would not have been directed at the plaintiff had she been a man.)  As the defendant correctly argues, without contravention from the plaintiff, "[n]o witnesses, including Plaintiff, has given any indication that there was any difference in the stories that Haynes told to wom[e]n versus men or any differences in how she treated men and women in the workplace.  Haynes, according to Plaintiff's evidence, told graphic stories about her sex life almost every day to men and women, to managers and co-workers, to anyone and everyone."[5]

---

[5]
  The plaintiff's testimony clearly supports the defendant's contention. *See  e.g.*, plaintiff's deposition at 69 and 71:

> Q. Now, who is she [Haynes] talking to when she would be telling these [sex] stories?
> A. It didn't matter. Whoever was there.  Whoever was available for conversation, she would tell them.
> * * *
> Q. ... Where would she be when she would be talking about this kind of thing?
> A. Outside in front of the store, on the side of the store break room, back room, produce, sales floor, Bob [Nicol's] office, huddles. It didn't matter.  Anywhere she was, she said what she wanted to say.
> * * *
> A. We would have huddles in the back room for service huddles. All the managers from each department would go into the back to discuss service and Teri would start tell[ing] her little sexual stories during huddles.

In her summary judgment response, the plaintiff in effect raises a sexual harassment claim that is different from that set forth in the FAC. The plaintiff asserts that the defendant's defense to the sexual harassment claim is flawed because it focuses only on Haynes' conduct, whereas the basis for her hostile work environment claim is instead the failure of the defendant's management, particularly store manager Bob Nicol, to react at all to her complaints about Haynes' conduct, *i.e.* the unlawful sexual harassment she is alleging that affects women more than men is management's failure to react to her complaints related to Haynes and that failure is what polluted the plaintiff's workplace and made her work life miserable.

The Court is unpersuaded. While the plaintiff is correct that an employer may be liable under Title VII if it tolerates an employee's sexual harassment of another employee, given that an employer's liability is direct and not derivative of the harasser's conduct, Swenson v. Potter, 271 F.3d 1184, 1191 (9th Cir. 2001), the crucial principle here is that the defendant cannot be liable under Title VII, regardless of its response or lack of response to the plaintiff's complaints about Haynes, if there was no actionable sexual harassment by Haynes.[6] Brooks v. City

---

[6] Because the Court concludes that Teri Haynes' conduct did not amount to actionable sexual harassment, the Court need not reach the issue of the plaintiff's harassment charges against co-workers Brad Miller and Greg Wagley. The gender-based harassing conduct alleged against Miller and Wagley is not relevant to the Court's resolution of the defendant's motion given that the alleged conduct occurred more than 300 days before the plaintiff filed her initial E.E.C.O. charge and is not part of the same unlawful employment practice arising from Haynes' conduct. *See* National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061 (2002). While those incidents may be relevant to the plaintiff's contention that the defendant's management failed to properly respond to her complaints about Haynes' conduct, the defendant's liability in that regard is no longer an issue.

of San Mateo, 229 F.3d at 927 n.10 (Court, in rejecting the plaintiff's claim that the employer city was liable for its failure to take remedial steps once it knew of the sexual harassment of the plaintiff by a co-worker, noted that "[a]s there was no actionable sexual harassment [by the co-worker], there is no liability to assign to the city.")

The plaintiff also argues that summary judgment is inappropriate on her sexual harassment claim because she has presented evidence raising a factual issue as to whether Nicol's failure to properly resolve Haynes' harassment of her and Nicol's discipline of her for conduct that male department managers were not similarly disciplined for was due to her gender. The Court disagrees because this argument is in effect an allegation of disparate treatment, not sexual harassment, and the plaintiff has expressly dropped the only disparate treatment claim she raised in the FAC.

Disability Discrimination

The plaintiff alleges in the Fifth Claim of the FAC that the defendant violated the Americans With Disabilities Act (ADA) because the plaintiff's disability was a motivating factor in the defendant's decision to demote her from her position as the produce manager of the defendant's Sedona store and transfer her to a non-supervisory position at the defendant's Cottonwood store.[7]

---

[7]

The Fifth Claim states:

44. Plaintiff incorporates herein by reference paragraphs 1 through 43 as set forth above.
45. Plaintiff has a disability within the meaning of the ADA.
46. Plaintiff was a qualified individual.
47. Plaintiff's disability was a motivating factor in the decision to demote and transfer the plaintiff.

The defendant argues in part that it is entitled to summary judgment on this claim because the plaintiff has not established one of the elements of her prima facie case, *i.e.* that she was disabled for ADA purposes at the time of her demotion and transfer. *See* Sanders v. Arneson Products, Inc., 91 F.3d 1351, 1353 (9th Cir. 1996), *cert. denied*, 520 U.S. 1116 (1997) (In order to establish a prima facie case of disability discrimination under the ADA, the plaintiff must show that she is a qualified individual with a disability who suffered an adverse employment action because of her disability.)

The plaintiff's position is that she was so disabled because the defendant, through Nicol, regarded her as having a mental impairment that substantially limited her ability to engage in the major life activity of working as a produce manager.[8] Even if an impairment does not substantially limit a major life activity, a plaintiff is protected by the ADA if an employer regards her as having an impairment that substantially limits a major life activity. Coons v. Secretary of U.S. Dept. of Treasury, 383 F.3d 879, 884 (9th Cir. 2004). In this context, "regarded as" means either that the employer mistakenly believes that the employee has an impairment that substantially limits one or more major life activities, or mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. Sutton v. United Air Lines, Inc., 527 U.S. 471, 489, 119 S.Ct. 2139, 2149-50 (1999).

---

[8] The Court concludes that it need not consider the issue of whether the plaintiff actually suffered from a ADA-recognized disability at the time of her demotion and transfer in order to resolve the defendant's summary judgment motion because the only ADA-related issue upon which the plaintiff has presented sufficient substantive argument in support is the issue of whether the defendant regarded her as suffering from an impairment that was substantially limiting and significant.

- 7 -

The threshold issue regarding the plaintiff's prima facie case is the parties' dispute as to whether the plaintiff's contention underlying her alleged inability to work is legally sufficient for ADA purposes. The issue is that while "working" is recognized as a major life activity under the ADA, Thornton v. McClatchy Newspapers, Inc., 261 F.3d 789, 794 (9th Cir. 2001), an impairment substantially limits a person's ability to work only if that person is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.") *Id.* at 794-95 (quoting from 29 C.F.R. § 1630.2(j)(3)(i).); *see also*, Sutton v. United Airlines, Inc., 527 U.S. at 492, 119 S.Ct. at 2151 (An individual must be precluded from engaging in more than one type of job, a specialized job, or a particular job of choice in order to be substantially limited in working.)

The defendant's position is that there cannot be any ADA violation as a matter of law even if it perceived the plaintiff as being unable to work as a produce manager because of her psychiatric disability inasmuch as any such perception related solely to a single, particular job. While the plaintiff's response to the summary judgment motion certainly lends itself to such an argument, the Court is ultimately unpersuaded by the defendant's argument because the plaintiff asserted for the first time at the oral argument, albeit very conclusorily and without citation to any supporting case law, that she was disabled for ADA purposes because she was perceived by Nicol as being disabled from performing a class of jobs, *i.e.*, the class of produce managerial jobs. The Court accepts this contention as being legally sufficient because there is some support in the law for

- 8 -

1 the proposition that a substantial limitation in the ability to perform a class of
2 supervisory jobs suffices to establish a perceived disability based upon the
3 inability to work.  *See e.g.*, Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 303-04
4 (4th Cir. 1998) (Court, noting that the plaintiff's field of employment for ADA
5 purposes was maintenance supervisory work as opposed to maintenance work in
6 general, concluded that the plaintiff, who had been demoted from being a
7 maintenance supervisor to being a maintenance worker following his return to
8 work from sick leave, had established that he was perceived by his employer as
9 being too disabled to perform a class of supervisory jobs.); *see also*, E.E.O.C. v.
10 Automatic Systems Co., 169 F.Supp.2d 1001, 1007 (D.Minn. 2001) (Court, in
11 denying summary judgment for the employer on the plaintiff's ADA claim,
12 concluded that a reasonable jury could conclude that the employer perceived the
13 plaintiff's heart condition as rendering him unable to work in any job with
14 supervisory or managerial duties.); Zakaras v. United Airlines, Inc., 121
15 F.Supp.2d 1196, 1217 (N.D.Ill. 2000) (Court denied summary judgment for the
16 employer on the plaintiff's ADA claim because there was evidence showing that
17 the employer's demotion of the plaintiff from his supervisory job was based on its
18 perception that the plaintiff's alcoholism prevented him from continuing to
19 supervise other employees.)

20       Viewing the evidence of record and the legitimate inferences therefrom in
21 the plaintiff's favor, the Court concludes that the plaintiff has established her
22 prima facie case because she has produced the very little evidence necessary for
23 a reasonable jury to infer that the defendant demoted and transferred her at least
24 in part because she was perceived by management personnel as no longer being
25 able to be an effective manager due to her psychiatric condition.  *See* Head v.

26                                      - 9 -

Glacier Northwest, Inc., 413 F.3d 1053, 1065 (9th Cir. 2005) ("[W]e hold that ADA outlaws adverse employment decisions motivated, even in part, by animus based on a plaintiff's disability[.]")  This evidence, for example, includes sarcastic comments made to the plaintiff by Nicol, prior to her demotion and transfer, about her need to take psychiatric medications and being under stress, and referring to the produce department as the "mental ward", Nicol's lowering of the plaintiff's scores on her annual performance evaluation in areas related to her supervisory abilities after he discovered that she was taking psychiatric medication, and the action taken at the meeting on May 20, 2003 whereby the plaintiff was asked to turn over her produce knife and was transferred to another store based on a fear that she might be capable of violent retaliation.

      The Court further concludes that the defendant has met its burden of producing evidence sufficiently establishing that it had legitimate, non-discriminatory reasons for the plaintiff's demotion and transfer, *e.g.*, Nicol's testimony that the reasons for the adverse employment action were the problems within the produce department caused by the plaintiff's leadership style and the animosity towards her by her subordinates, with the culminating factor being the complaints by produce clerk Lindsey Bassett and her boyfriend, Bruce Jurecki, about the plaintiff pressuring Bassett to have an abortion.   That being the case, the issue becomes whether the plaintiff has raised a genuine factual issue as to whether the defendant's articulated reasons were a pretext for disability discrimination. *See* Snead v. Metropolitan Property & Casualty Ins. Co., 237 F.3d 1080, 1093 (9th Cir.), *cert. denied*, 534 U.S. 888 (2001) (Court concluded that the McDonnell Douglas burden-shifting framework applies to ADA discrimination cases.)

The plaintiff may meet her pretext-related burden in part by indirectly showing that the defendant's proffered explanation is unworthy of credence. *Cf.* Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1066 (9th Cir. 2003). While circumstantial evidence of pretext must be specific and substantial in order to defeat summary judgment, *Id.*, the standard for raising a raising a triable issue as to whether the plaintiff's demotion and transfer was influenced by improper motives is relative low. *Id.* at 1972.  Evidence discrediting the reasons put forward by the defendant together with the elements of the plaintiff's prima facie case may suffice to show intentional discrimination. Hernandez v. Hughes Missile Systems Co., 362 F.3d 564, 568 (9th Cir. 2004).  Viewing the evidence and legitimate inferences therefrom in the plaintiff's favor, the Court concludes that the plaintiff has provided some limited evidence sufficient to raise a genuine issue of material fact regarding the truth of the defendant's proffered non-discriminatory reasons or that a discriminatory reason more likely motivated the defendant to demote and transfer her. *See* Strother v. Southern Calif. Permanente Medical Group, 79 F.3d 859, 870 (9th Cir. 1996) ("[A] plaintiff need produce very little evidence of discriminatory motive to raise a genuine issue of fact as to pretext.") (Internal quotation marks omitted.)  The plaintiff has, for example, submitted evidence that Nicol's averse views as to her ability to be an effective manager commenced after he found out that she was taking medication for a psychiatric impairment, and that the decision to demote and transfer was made prior to the time the defendant's investigation into her alleged improper conduct towards Lindsey Bassett was completed, which was in violation of the defendant's policy.

Disability Harassment

The plaintiff, in her response to the summary judgment motion and at oral

argument, raised the claim that she was subjected to a hostile work environment based upon her disability in violation of the ADA.  Although this claim was not formally raised as a separate claim in the FAC, the Court will allow the plaintiff to pursue it because the issue of disability-based harassment was raised in paragraph 9 of the FAC[9], and because the defendant has not formally objected to the plaintiff raising it.  The Court assumes, without deciding, that an ADA-based hostile work environment claim is actionable in this circuit.

The Court concludes it need not dwell on this claim because the defendant, by not discussing the merits of the claim in its memoranda or at oral argument, has not met its burden of pointing to the absence of facts supporting the plaintiff's prima facie case.   At best, the defendant argues only that the plaintiff has not established one of the elements of her prima facie case, *i.e.*, that she belonged to a protected group, which under the facts of this case means that she was regarded at the relevant time as being a qualified individual with a disability.   This is insufficient given the Court's determination that there is a triable issue of material fact as to whether the defendant perceived the plaintiff as being disabled

---

[9]
    Paragraph 9 of the FAC states:

    Almost immediately upon his arrival [as store manager], Nicole [sic] engaged in a pattern and practice of discrimination and harassment against the Plaintiff on the basis of a disability.  Plaintiff suffers from psychiatric conditions, including schizophrenia, mood disorder, and depression, which is ordinarily controlled by medication.  Nicole [sic] would routinely berate her for her condition, and would encourage other employees to do the same.  Nicole [sic] would consistently refer to the produce department managed by the plaintiff as the "mental ward".  He would constantly make sarcastic comments.  For instance, when she would approach him requesting assistance with an insubordinate employee, he would dismiss her request by suggesting that she, "take her medication."  Nicole's [sic] consistent berating of Plaintiff on the basis of her disability severely interfered with Plaintiff's ability to perform her duties as Produce Manager.

from working in a class of jobs.

Retaliation

The plaintiff alleges in her Second Claim in the FAC that the defendant retaliated against her by subjecting her to an adverse employment action because she reported unlawful employment practices and because she took leave pursuant to the Family and Medical Leave Act (FMLA).[10] In her response to the summary judgment motion, the plaintiff argues that she was retaliated against in violation of both Title VII and the ADA.[11]

Retaliation claims under both Title VII and the ADA are analyzed under the same framework. Pardi v. Kaiser Foundation Hospitals, 389 F.3d 840, 850 n.5 (9th Cir. 2004).   In order to establish a prima facie case of retaliation, the plaintiff must demonstrate that (1) she engaged in protected activity, (2) that the defendant thereafter subjected her to an adverse employment action, and (3) a causal link exists between her protected activity and the adverse employment action.  If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for

---

[10] The allegations of the Second Claim state:

30. Plaintiff incorporates herein by reference paragraphs 1 through 29 as set forth above.
31. Plaintiff engaged in or was engaging in an activity protected under federal law; that is she reporting [sic] unlawful employment practices and took leave under the Family Medical Leave Act.
32. Plaintiff suffered an adverse employment action following her reporting of unlawful employment practices and taking medical leave.
33. Plaintiff would not have suffered the adverse employment action but for her engagement in protected activities.

[11]  Since the plaintiff does not even mention the FMLA in her response to the summary judgment motion, the Court concludes that the FMLA no longer has any significance to the plaintiff's case.

the adverse employment action. If the defendant carries that burden, then the plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the defendant for the adverse employment action was pretextual. Brooks v. City of San Mateo, 229 F.3d at 928.

In its summary judgment motion, the defendant only challenges the second element of the plaintiff's prima facie case in that it argues that the plaintiff cannot establish the existence of an adverse employment action as a matter of law. The Supreme Court has recently clarified that an adverse employment action for purposes of a retaliation claim is one that is materially adverse from the perspective of a reasonable person in the plaintiff's position, *i.e.* one that might dissuade a reasonable worker from making or supporting a charge of discrimination. Burlington Northern & Santa Fe Railway Co. v. White, __ U.S. __, 126 S.Ct. 2405, 2415 (2006). The Court concludes that the plaintiff has satisfied this element of her prima facie case at the very least by her submission of significant probative evidence establishing that she was demoted and transferred from her day-shift produce manager's job at the defendant's Sedona store to a night-shift produce clerk's job at the defendant's Cottonwood store.[12]

In it reply memorandum, the defendant argued for the first time that the plaintiff had also failed to establish the causation element of her prima facie case. Although the Court need not consider this argument given that it was not initially raised in the defendant's motion, *cf.* United States v. Patterson, 230 F.3d 1168, 1172 n.3 (9th Cir. 2000) (Arguments raised for the first time in a reply brief are

---

[12] The Court rejects the defendant's contention in its motion that the plaintiff's retaliation claim is predicated solely on post-transfer events at the defendant's Cottonwood store.

waived), the Court concludes that the plaintiff has produced the very little evidence needed to satisfy this element of her prima facie retaliation claim. The plaintiff has, for example, submitted evidence showing that the evaluation of her performance by Nicol, who played a significant role in her demotion and transfer, became significantly more negative after she started complaining to him about Teri Haynes' inappropriate sexual conversations and after he learned that she was taking psychiatric medication, and that the defendant did not give her the corrective action letter stemming from her alleged pressuring of Lindsey Bassett to have an abortion until June 2, 2003, which was after the defendant was aware that she had filed her initial charge of discrimination with the E.E.O.C.

Given the Court's conclusion that the defendant has produced a legitimate, nondiscriminatory reason for its adverse actions against the plaintiff, the issue is whether the plaintiff has provided sufficient evidence of pretext to survive summary judgment. The Court concludes that she has, for some of the reasons supporting her prima facie case.  The plaintiff has raised a genuine issue of material fact because a rational jury could infer from the evidence of record that an illegitimate reason was at least a motivating factor for the adverse actions taken against her, both before and after her demotion and transfer.  The plaintiff has, for example, submitted significant probative evidence from which a reasonable jury could infer a relationship between both her worsening performance evaluations, which the defendant assert formed a basis for her demotion and transfer, and the increasingly hostile environment in which she had to work, and Nicol's knowledge of her sexual harassment complaints and her taking of psychiatric medications.  *See* Winarto v. Toshiba America Electronics Components, Inc., 274 F.3d 1276, 1284 (9th Cir. 2001) ("An unwarranted

reduction in performance review scores can constitute evidence of pretext in retaliation cases.)  The plaintiff has also submitted significant probative evidence establishing that Cottonwood store manager Butterbrodt refused to take her off the night shift despite her numerous requests that he do so, and otherwise subjected her to harassing conduct, after learning that she had filed a discrimination charge with the E.E.O.C.[13]    Therefore,

IT IS ORDERED that Safeway's Motion for Summary Judgment (doc. #54) is granted to the extent that the First, Third, Fourth, and Fifth Claims of the First Amended Complaint are dismissed and is denied as to the remaining claims of the First Amended Complaint.

IT IS FURTHER ORDERED that the parties shall file their Joint Pretrial Statement and any motions in limine no later than **November 30, 2006**.[14]

/ / /

/ / /

/ / /

/ / /

/ / /

---

[13]   The Court rejects the defendant's contention that there is no evidence in the record showing that Jerry Butterbrodt knew of the plaintiff's discrimination charge.  While the plaintiff does not in fact cite to any such evidence in her response or in her statement of facts, her submitted deposition testimony provides support for Butterbrodt having such knowledge.  *See* plaintiff's deposition at 372.

[14]   The parties shall review paragraphs 6 and 7 of the Scheduling Order (doc. #13) entered on August 10, 2004.  As the Court noted in its Amended Scheduling Order (doc. #39), paragraph 5 of the Scheduling Order is no longer applicable.

IT IS FURTHER ORDERED that the final Pretrial Conference shall be held on **Monday, January 8, 2007 at 3:00 p.m.** in Courtroom 601.[15]

DATED this 25th day of September, 2006.

Paul G. Rosenblatt
United States District Judge

---

[15] The parties shall review paragraphs 8 and 9 of the Scheduling Order.